---------------------------------------------------------------

In re

  Nicholas Naples            Case No. 14-10264 K

         Debtor

---------------------------------------------------------------

OPINION AND ORDER

  Before the Court is an objection to a Motion, under 11 U.S.C. § 522(f), seeking to set aside a judgment lien on the Debtor's undivided entireties interest in his marital home. I write on it only to express my agreement with, and to further support, my colleague's analysis in the case of *In re Bradigan*, 501 B.R. 151 (Bankr. W.D.N.Y. 2013) (Bucki, C.J.). In *Bradigan*, a Chapter 7 trustee argued that the federal homestead exemption (it was then in the amount of $21,625) was insufficient to protect that debtor's undivided entireties interest in the marital home because the entire equity in the home was $35,421, and in several cases in our sister court of the Eastern District of New York, it was held that an undivided entireties interest should be valued at the full amount of the equity in the home for § 522(f) purposes. (See *In re Levinson,* 372 B.R. 582 (Bankr. E.D.N.Y. 2007), affirmed 395 B.R. 554 (E.D.N.Y. 2008), *In re Heaney*, 453 B.R. 42 (Bankr. E.D.N.Y. 2011); *In re Martin*, 2013 WL 3956384 (Bankr. E.D.N.Y. 2013).)

  The *Bradigan* decision and the two *Levinson* decisions addressed the following words spoken by the highest court of the state of New York in the case of *V.R.W., Inc. V. Klein,* 68 NY2d 560 (N.Y. 1986):

  **As long as the marriage remains legally intact, both parties continue**

**to be seized[1] of the whole, and the death of one merely results in the defeasance of the deceased spouse's co-extensive interest in the property.**

Moreover, both *Bradigan* and the bankruptcy court in *Levinson* (but not the district court in *Levinson*) addressed this language from *Klein*:

**[Each] tenant may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing rights of the other.**

To the *Levinson* courts and their progeny this meant that whenever an entireties tenant files alone, the value of his or her interest in the entireties real estate is the value of all equity in the property, not to be divided or prorated between the filing tenant and the non-filing tenant.

Chief Judge Bucki in *Bradigan* neither agreed nor disagreed with the *Levinson* definition of the extent of such a debtor's interest in entireties properties.  Rather, he stated:

**No one can dispute that each spouse is seized of the whole property that he or she may own as a tenant by the entirety.  The issue in bankruptcy is how to <u>value</u> that unique interest.  Though fully <u>seized of the whole</u>, the separate interest of one spouse is subject to the rights of the co-owner.  By reason of this limitation, we must <u>value</u> the Debtor's interest at something less than the interest of a single owner in fee simple absolute. In a tenancy by the entirety, each spouse enjoys an identical form of ownership.  Because each has equal claim of ownership, both the debtor and his non-debtor spouse may appropriately divide the homestead's total value for purposes of valuation in bankruptcy. . . . Mathematically, the total**

---

[1] "Seized" and "seised" are interchangeable according to Black's Law Dictionary.

> **must always equal the sum of its parts. To the extent that husband and wife each hold a recognizable interest in property, their respective individual interest must necessarily equal something less than the whole. To hold otherwise would invite havoc in those instances where wife and husband file separate and non-joint petitions for bankruptcy relief. Surely, neither of their separate trustees can administer the whole of property held by the entireties, but must accept an allocation as between the two estates. Exemptions, if claimed, would then apply to the allocated interest of each spouse. Similarly, where only one spouse filed, he or she may exempt an aggregate interest in that same allocation. For purposes of determining the exemptible interest in property held by the entireties, we need not here decide whether a spouse can ever justify an unequal allocation based on actuarial or other consideration.**

[Emphasis mine.]


      The *Bradigan* court fixed the value of the debtor's undivided interest at 50% of the equity in the homestead because it was "presumptively reasonable," and there was "no evidence to compel a different valuation."

      I fully concur with that analysis. I respectfully add a somewhat different approach as and for further support of that ruling.

      The present writer respectfully submits that *Levinson* misread the *Klein* decision, and so it incorrectly defined that debtor's § 541 property interest. The *Klein* decision is not difficult to understand so long as one reads it as stating a compete two-part doctrine, and

refrains from placing undue emphasis on one part of it. To paraphrase its holding: (1) When one entireties tenant dies, the survivor acquires fee title, but <u>not because</u> the survivor's interest has been increased by virtue of the death. Rather, the death <u>ended the limitations</u> upon the survivor's interest (which always was a shared ownership of the whole). (2) Prior to a death, and so long as the marriage is still intact, an entireties tenant <u>is free to transfer or encumber his or her undivided interest "subject to the continuing rights of the other."</u> To this writer, a voluntary bankruptcy filing is such an encumbrance.

*Levinson*, at the bankruptcy court level, focused too much (in my view) on the first part of the *Klein* holding; <u>i.e.</u>, one tenant is "seized of the whole." Also it jumped to the conclusion that because "[the] <u>value</u> of a debtor's interest is a function of state law," being seized of the whole means <u>valuing</u> the interest of all of the equity value. This Court suggests that *Levinson* skipped a step. It did not focus enough on the freedom that one entireties tenant has to alienate his or her own undivided interest.

Filing a voluntary bankruptcy by one entireties tenant is an alienation by operation of 11 U.S.C. § 541.[2] A § 541 estate contains the undivided entireties interest, and a trustee may sell it.[3] But all § 541 property is "*cum onere*."

Consider a hypothetical. An individual owns a homestead that is subject to

---

[2] Under § 70 of the 1898 Act, filing was a conveyance to a trustee "by operation of law." Although "conveyance" was dropped in 1978, § 541 has been viewed as a broader, not narrower, "alienation" or "assignment" of a debtor's interests in property

[3] Trustees regularly did so as to marital homes when the homestead exemption was only $10,000. (I.e., prior to 2005). For $14,000 or $15,000 ($10,000 to satisfy the debtor's homestead exemption and $4K or $5K to creditors, a speculator would chance that that debtor would outlive his or her spouse. The speculator hoped to end-up being the sole owner. The statutory escalation of the NY homestead exemption to at least $75,000 (as of 2010) ended that practice because of risk analysis, not because undivided entireties interests are not still within the authority of a trustee to sell.

deed restrictions against, for example, commercial use.  It might be a condominium or co-op,[4] or a single family home in a deed-restricted community.  Certainly such an individual is "seized of the whole" in common law terms, but that does not mean that the home should be valued as if no such restrictions exist.  (Recall that in *Klein*, the restrictions in favor of a spouse did not mean that the debtor was <u>not</u> "seized of the whole.")  In the case of a single family home along the perimeter of a deed-restricted residential-only community, the owner might agree with a developer of adjoining land that the parcel upon which the home sits would be worth half a million dollars if the land could be incorporated into the commercial development.  The home might have fair market value of only $200,000 as a single family residence.  The fact that the homeowner is "seized of the whole" does not mean that he or she is free to sell the parcel for commercial development.  Thus, the value of the owner's interest is only $200,000.  I suggest that the *Klein* holding regarding an undivided entireties interest is analogous.  Section 541 property's burdens are not cleansed in bankruptcy.  They come "with their burdens."

Furthermore, for entireties property to fetch fair market value, both spouses must sign the deed.  Although 11 U.S.C. § 363(h) suggests that that is not true in bankruptcy, § 363(j) unavoidably leads back to the *Bradigan* result - - a <u>presumption</u> of 50-50 ownership of the proceeds of the sale.  (The fact that the bankruptcy estate is "seized of the whole" does not mean that it owns all of the proceeds, leaving the non-debtor spouse with nothing.)  And the debtor spouse <u>in</u> bankruptcy may claim his or her exemption against the portion of the proceeds allocated to the § 541 estate.

---

[4]More than fifteen years ago, this writer presided over the case of a physician whose medical office was in a co-operative residential professional building.  After he incurred a great deal of debt in the planning and construction of an "independent" lab in his space, he learned that a lab in that building was prohibited.  The value of the unit was, of course, impaired by that limitation.

## CONCLUSION

In the present case the judgment creditor's objection to the Debtor's § 522(f) Motion is overruled to the extent that it is based on the *Levinson* theory. It seems that there might also be a valuation dispute as to which that theory is not relevant. Consequently, this matter is restored to the Calendar for **January 7, 2015 at 10:00 a.m.** In the meantime, this is not an appealable judgment.

SO ORDERED.

Dated:     Buffalo, New York
           December 16, 2014

                                          s/Michael J. Kaplan
                                  _____
                                          U.S.B.J.